UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MAVL CAPITAL, INC. *et. al*,

                Plaintiffs,

       - against -

MARINE TRANSPORT LOGISTICS, INC. *et. al*,

                Defendants.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**

13-cv-7110 (SLT) (RLM)

Maxim Ostrovskiy, and his companies, MAVL Capital, Inc. and IAM & AL Group Inc. (collectively, "Plaintiffs") – who are in the business of purchasing automobiles in America and selling them in Europe – bring this action against (1) Marine Transport Logistics, Inc., ("MTL"), and its director, Dimitry Alper, and (2) Aleksandr Solovyev, and his companies, Royal Finance Group, Inc. ("Royal Finance") and Car Express & Import Inc. ("Car Express") (collectively, "Defendants") – who are in the business of financing and transporting vehicles overseas – alleging that Defendants violated various state and federal laws by asserting a lien on Plaintiffs' automobiles and other property. Defendants filed their answer, and then their motion for judgment on the pleadings, styled as a motion to dismiss.[1] For the following reasons, Defendants' motion for judgment on the pleadings is granted in part, and Plaintiffs are ordered to show cause within 30 days of the date of this order why their state law claims should not be dismissed for lack of jurisdiction.

---

[1] "[T]he appropriate response [to a motion to dismiss filed after an answer] is to treat such an untimely motion to dismiss as a motion for judgment on the pleadings under Rule 12(c)." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).

## Legal Standard

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988).

The standard applied to a motion for judgment on the pleadings is the same as that used for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). "In both postures, the district court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *Id.*; *see also Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir. 2009). A complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted). On a Rule 12(c) motion, the Court may consider "the complaint, the answer, any written documents attached to them, ... any matter of which the court can take judicial notice for the factual background of the case [,] ... any written instrument attached ... as an exhibit, materials incorporated ... by reference, and documents that, although not incorporated by reference, are

integral" to the pleadings. *L–7 Designs, Inc. v. Old Navy, LLC,* 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation marks omitted).

**Factual Background**

With this standard in mind, the following facts, which are drawn from Plaintiffs' complaint, are deemed true for purposes of this motion.

Plaintiffs are in the business of purchasing vehicles from within the United States and from abroad, and then selling those vehicles to customers in Europe. (Compl. ¶ 2.) Defendants are in the business of financing the purchase of vehicles, storing vehicles, and shipping them to foreign ports. (Compl. ¶¶ 3-9.) MTL, of which Alper is the director, is a licensed Non–Vessel Operating Common Carrier ("NVOCC") regulated by the Federal Maritime Commission. (Compl. ¶3.) MTL does not itself operate a vessel, but rather arranges for cargo to be delivered to one of its United States storage facilities, where it consolidates the cargo, and then retains ocean carriers to perform the overseas carriage. (Compl. ¶4.) It also acts as a "logistics service company, and provides services including, but not limited to ocean freight, ground transportation, auto shipping, warehousing, tracking and tracing, and containerization." (Compl. ¶ 53). In addition to its role as shipping provider, MTL also provides financing for automobile dealerships and personal shippers who wish to purchase automobiles for shipment to various ports abroad. (Compl. ¶¶ 5.) Solovyev is principal of both Royal Finance and Car Express, both of which are agents of MTL. (Compl. ¶ 18.) Royal Finance issues invoices, collects payments for shipping, delivery charges, commissions and other fees from automobile dealerships and personal shippers who have used MTL's services. (Compl. ¶ 9.) Car Express is a licensed automobile dealer that purchases used and salvaged cars from auctions and dealerships for sale to

its customers, and acts on behalf of MTL in coordinating the purchase and transport of those vehicles for shipment from the United States to various ports abroad. (Compl. ¶¶ 6-8.)

Between January and August of 2013, Plaintiffs contracted with MTL to, *inter alia*, ship cars abroad. (Compl. ¶ 45.) The financing arrangement/ownership status of each car was one of the following: (1) Plaintiffs owned some of the cars outright; (2) foreign customers had already paid Plaintiffs, in whole or in part, for some of the cars; and (3) Defendant Royal Finance Group provided financing for some of the cars and, in exchange, MTL was to be the exclusive shipping agent for those cars. (Compl. ¶¶ 45-48.) Plaintiffs agreed to pay for shipping and delivery, inclusive of all freight and charges. (Compl. ¶ 50.) In addition, for cars financed by Defendants, Plaintiffs agreed to pay a flat fee of 2.5% of the amount financed at the time of delivery. (Compl. ¶ 51.)

In August 2013, the parties' relationship soured after Plaintiffs worked out a more favorable arrangement with another shipping company and notified Defendants of their intent to wind down their relationship. (Compl. ¶¶ 65-70.) At that point, Defendants had five of Plaintiffs' vehicles and two replacement seats in their possession. (Complaint ¶¶ 78-109) (2006 Mercedes SL65, 2004 Bobcat S205, 2006 Bobcat S250, 2010 Bobcat S185, 2011 Porsche Panamera). Plaintiffs had retained Defendants to store two of these vehicles and the two replacement seats for shipment by a third party, and to ship the other three vehicles overseas. (Comp. ¶¶ 78-79, 84, 89-90, 93, 100, 102, 106-107) Instead, Defendants made demands for payment and, when Plaintiffs did not pay, refused to release the cargo and shipped some of it overseas. (Compl. ¶¶ 83, 86-87, 91-92, 97-98, 103-104, 108-109.) Additionally, Defendants fraudulently obtained title to three of Plaintiffs' motorcycles, which were being stored by a third

4

party, and then used the fraudulent titles to take possession of Plaintiffs' motorcycles. (Complaint ¶¶ 110-127).

By complaint filed December 12, 2013, Plaintiffs commenced this action seeking to recover over one million dollars in compensatory and punitive damages. The complaint alleges (1) federal question jurisdiction, under the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701, and the Shipping Act of 1984, 46 U.S.C. §40101, *et seq.*,; (2) jurisdiction under this Court's "original jurisdiction in maritime matters," and (3) supplemental jurisdiction over Plaintiffs' state law claims. (Compl. ¶¶ 29-30). Plaintiffs assert that Defendants' failure to release their cargo violated the Shipping Act by, in effect, imposing an unlawful tariff, and amounted to extortion in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"). (Compl. ¶¶ 128-130, 171-179.) Plaintiffs further allege claims for breach of fiduciary duties, conversion, civil conspiracy, tortious interference with business relations, breach of contract, common-law fraud and a violation of N.Y. Gen. Bus. Law § 349, and plead claims against individual defendants under a corporate veil piercing theory. (Compl. ¶¶ 131-173.) On May 14, 2014, Defendants answered, denying all of Plaintiffs' allegations and asserting a counterclaim for non-payment of outstanding freight and/or storage charges. (Ans. ¶¶ 184-188.)

## Discussion

### A. *The Shipping Act*

Plaintiffs claim that MTL violated the Shipping Act, 46 U.S.C. § 40101 *et seq.*, "by imposing charges which were never agreed upon and never published with the [Federal Maritime Commission ("FMC")] and by unlawfully seizing Plaintiffs' cargo, holding it as security and/or

collateral for the payment of an unjust and unlawful debt." (Compl. ¶129.) Plaintiffs do not identify under which section or sections of the Shipping Act they purport to bring suit.

The Shipping Act, which regulates the carriage of cargo over seas, was enacted to "establish a nondiscriminatory regulatory process for the common carriage of goods by water in the foreign commerce of the United States...." 46 U.S.C. § 40101. The statute empowers the FMC, an independent federal agency, to enforce violations of the Act. *Fed. Mar. Comm'n v. S. Carolina State Ports Auth.*, 535 U.S. 743, 773 (2002) (describing the FMC as an independent federal agency "most appropriately considered to be part of the Executive Branch"); *See* 46 U.S.C. § 41301 (complaints for violations of the Shipping Act are filed with the FMC); 46 U.S.C. § 41302 (the FMC may investigate suspected violations of the Shipping Act on complaint or its own motion); 46 U.S.C. § 41304 (before assessing penalties, the FMC shall provide an opportunity for a hearing); 46 U.S.C. § 41305 (the FMC may award damages and attorney's fees); 46 U.S.C. § 41109 (the FMC may also assess civil penalties, payable to the United States); 46 U.S.C. § 41307 (in connection with an investigation, the FMC may enjoin conduct that violates the Shipping Act).

Generally, "the Shipping Act does not provide for a private cause of action in federal district court; rather, alleged violations of the Shipping Act must be addressed with the Federal Maritime Commission." *Mediterranean Shipping Co. USA Inc. v. AA Cargo Inc.*, 46 F. Supp. 3d 294, 301 (S.D.N.Y. 2014) (collecting cases); *see also Port Auth. of New York & New Jersey v. Maher Terminals, LLC,* No. Civ. 08–2334, 2008 WL 2354945, at *3 (D.N.J. June 3, 2008) ("[N]o provision of the Shipping Act of 1984 provides a federal cause of action for violations of the Act."). Although the Shipping Act contemplates that district courts will play a limited role in the adjudication of violations of the Act, by enforcing the FMC's orders, Plaintiffs cannot avail

themselves of any remedy in federal court unless they first lodge a complaint with the FMC. *See Troy Container Line, Ltd. v. Housewares, Inc.*, 312 F. Supp. 2d 482, 483 (S.D.N.Y. 2004) (*sua sponte* dismissing breach of contract action for lack of jurisdiction because "the Shipping Act does not confer jurisdiction on the district courts in actions to collect [shipping payments, although it] grants the district courts jurisdiction *to enforce* orders of the FMC," and thus, "if plaintiff is determined to litigate this case in a federal court, it first will have to obtain a reparation order from the FMC") (emphasis added); *In re M/V Rickmers Genoa Litig.*, 622 F. Supp. 2d 56, 69 (S.D.N.Y.) *aff'd sub nom. Chem One, Ltd. v. M/V RICKMERS GENOA*, 502 F. App'x 66 (2d Cir. 2012) (summary order) ("[T]he Shipping Act was not meant to affect maritime parties' rights and liabilities for purposes of civil litigation. Plaintiffs may not sue under the Shipping Act unless and until they have lodged a complaint with the FMC and an investigation has been concluded."); *see also* 46 U.S.C. § 41107(b) (district courts may entertain actions in rem to enforce liens created by civil penalties imposed by the FMC); 46 U.S.C. § 41109 (district courts may enforce civil penalties imposed by the FMC); 46 U.S.C. § 42104 (district courts may enforce orders and subpoenas issued by the FMC); 46 U.S.C. § 41309 (district courts may enforce an FMC order for the payment of reparations). Accordingly, Plaintiffs' Shipping Act claims are dismissed.

### B. Racketeer Influenced and Corrupt Organizations Act

"To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) (internal quotation marks and citations omitted). Here, Plaintiffs allege a violation of § 1962(c). To establish a violation of § 1962(c), "a plaintiff must show (1) conduct (2) of an enterprise (3)

through a pattern (4) of racketeering activity." *Id.* at 306 (citation omitted). "Racketeering activity" encompasses a variety of state and federal offenses, enumerated in 18 U.S.C. § 1961(1), while a "pattern" of such activity requires at least two such predicate acts or offenses, 18 U.S.C. § 1961(5).

Here, Plaintiffs allege that in August of 2013, after their business relationship soured and Plaintiffs decided to retain a different NVOCC, Defendants held Plaintiffs' cargo 'hostage' unless Plaintiffs paid purportedly trumped-up fees, (Compl. ¶¶ 62-66) and when Plaintiffs refused to pay, refused to return the cargo (Compl. ¶¶ 81, 92, 108, 123), and shipped some of it overseas without Plaintiffs' consent (Compl. ¶¶ 87, 98, 104). Plaintiffs contend that this conduct constitutes multiple acts of extortion – a predicate act under 18 U.S.C. § 1961(1).[2] However, even if Defendants' conduct amounted to extortion, Plaintiffs allege only one predicate act of extortion – an attempt to use financial coercion to force Plaintiffs not to unwind their business relationship with Defendants – accomplished over several weeks. *See, e.g., Franzone v. City of New York*, No. 13-CV-5282 NG, 2015 WL 2139121, at *8 (E.D.N.Y. May 4, 2015) (finding only one act of extortion although "the extortion alleged was accomplished over several weeks or in multiple steps"); *Andrea Doreen Ltd. v. Bldg. Material Local Union*, 299 F. Supp. 2d 129, 153 (E.D.N.Y. 2004) (repeated attempts to extort money from plaintiff constitute "one act" for RICO

---

[2] The Hobbs Act prohibits "obstruct[ing], delay[ing], or affect[ing] commerce or the movement of any article or commodity in commerce," by, *inter alia*, extortion, which is defined as "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C.A. § 1951(a), (b)(2). Likewise, New York state criminal law prohibits larceny by extortion, defined as "wrongfully tak[ing]" property "with intent to deprive," by "compel[ling] or induc[ing] another person to deliver such property ... by means of instilling in him a fear that, if the property is not so delivered, the actor or another will: [*inter alia*,] ... (ix) Perform any ... act which would not in itself materially benefit the actor but which is calculated to harm another person materially with respect to his health, safety, business, calling, career, financial condition, reputation or personal relationships." N.Y. Penal Law § 155.05(1), (2)(e)(ix).

8

purposes, where plaintiff alleged extortion "by the same officials against the same victims on two occasions"); *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997) ("[C]ourts must take care to ensure that the plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO.").

In any event, Plaintiffs have failed to plead a *pattern* of racketeering. To constitute a pattern of racketeering activity, predicate acts must be "related" and "amount to or pose a threat of continued criminal activity." *DeFalco v. Bernas*, 244 F.3d 286, 320 (2d Cir. 2001) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)); *see also Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184-186 (2d Cir. 2008); *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999). The continuity requirement may be satisfied by showing either "close-ended continuity" or "open-ended continuity." *DeFalco*, 244 F.3d at 320. Closed ended continuity is "demonstrated by predicate acts that amount to continued criminal activity by a particular defendant." *Id.* at 321 (citing *H.J. Inc.*, 492 U.S. at 242). This requires the plaintiff to allege "a series of related predicates extending over a substantial period of time," and although there is no bright-line defining "a substantial period of time," the Second Circuit "has never held a period of less than two years to constitute a 'substantial period of time.'" *Id.* (citing *H.J. Inc.*, 492 U.S. at 242; *Cofacredit*, 187 F.3d at 242). Alternatively, the plaintiff may plead open-ended continuity, which exists when "there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Id.* at 323 (citing *Cofacredit*, 187 F.3d at 242); *see also GICC Capital Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 466 (2d Cir. 1995) (describing an open-ended pattern of racketeering as "past criminal conduct coupled with a threat of future criminal conduct"). When an open-ended pattern of racketeering

9

is alleged, a court looks to the nature of the RICO enterprise and of the predicate acts. *DeFalco*, 244 F.3d at 323. The Second Circuit has explained that:

> [w]here an inherently unlawful act is performed at the behest of an enterprise whose business is racketeering activity, there is a threat of continued criminal activity, and thus open-ended continuity. However, where the enterprise primarily conducts a legitimate business, there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity.

*Id.* (internal quotation marks and citations omitted).

Here, Plaintiffs have failed to plausibly allege a pattern of racketeering activity under either a "closed-ended" or "open-ended" theory. Plaintiffs plead that:

> (1) [D]efendants have engaged *in an ongoing scheme* in which they have continued to take th[e] fundamental business model of seizing cargo on the basis of an unlawful debt and have applied it *over and over again* in an effort to obtain unjust and unlawful compensation;
>
> (2) that [Defendants] are criminals *who lure customers* into a business relationship on purportedly favorable terms and in the course of the relationship, [Defendants], as the shippers, exercise dominion and control of the shipment; and
>
> (3) Generally when [Defendants] notice that the relationship is deteriorating or at some other strategically opportune time, these [D]efendants utilize self-help to orchestrate an extra-judicial seizure of goods and demand a ransom under the threat that the seized goods will be sold off without regard for the value which would cause significant financial damage to its victims

(Pls.' Br. at 24 (quoting Compl. ¶¶ 69-70, 176) (emphasis in original)). Plaintiffs allege that Defendants first "unlawfully seized" Plaintiffs' cargo "in or around August 2013." (Compl. ¶¶ 62, 65). The most recent incident detailed in the complaint is October 23, 2013, the date that Alper fraudulently obtained a replacement title for one of Plaintiffs' motorcycles. (Compl. ¶ 119.) Even assuming Plaintiffs have sufficiently pleaded at least two incidents of extortion taking place between August and October 2013, a period of two months does not amount to a "substantial period of time," as required to state a closed-ended pattern of racketeering.

Likewise, Plaintiffs fail to plead open-ended continuity, *i.e.*, "a threat of continuing criminal activity." *DeFalco*, 244 F.3d at 323 (quoting *Cofacrèdit*, 187 F.3d at 242). Although Plaintiffs clarify in their brief that they "are not referring solely to the specific acts committed by defendants against Plaintiffs" (Pls.' Br. at 24), the complaint does not plead that Defendants still possess any more of Plaintiffs' cargo, nor do Plaintiffs plausible allege the existence of any other victims of Defendants' racketeering scheme. The facts here do not suggest that the alleged extortion was part of Defendants' "regular way of operating th[eir] business." *DeFalco*, 244 F.3d at 323 (citation omitted). Nor does "the nature of the predicate acts themselves impl[y] a threat of continued criminal activity," given that the dispute between the parties appears to have arisen out of a soured business arrangement between two otherwise law-abiding businesses and their principals, and this business arrangement has ended. *Id.* Plaintiffs' mere speculation that Defendants engaged in an "ongoing scheme," and "over and over again" "lure[d] customers" into its scheme does not suffice to plead open-ended continuity. Accordingly, because Plaintiffs have failed to allege a pattern of racketeering, Plaintiffs' RICO claims are dismissed.

### C. *Supplemental Jurisdiction*

The complaint alleges that this Court has jurisdiction over Plaintiffs' federal and state law claims under its federal question, maritime, and supplemental jurisdiction, 28 U.S.C. §§ 1331, 1333, and 1367, and "the court's original jurisdiction in maritime matters." (Compl. at ¶¶ 29-30.) Although the complaint mentions the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701, no claims are brought under the COGSA, and, for the foregoing reasons, Plaintiffs' federal claims are dismissed. Thus, only Plaintiffs' state law claims and Defendants' state law counter claim remain.

Title 28 U.S.C. § 1367(c)(3) "permits a district court in its discretion, to decline to exercise supplemental jurisdiction over state law claims if it has dismissed all federal claims." *Tops Markets, Inc. v. Quality Markets, Inc.*, 142 F.3d 90, 103 (2d Cir. 1998). "The court must 'consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction' over the pendent claim." *Raucii v. Town of Rotterdam*, 902 F.2d 1050, 1055 (2d Cir. 1990) (quoting *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Cohill*, 484 U.S. at 350 n. 7. Given that Plaintiffs federal claims against Defendants have all been dismissed, the court declines to exercise supplemental jurisdiction over the remaining state law claims.

In their complaint, Plaintiffs suggest that this Court has jurisdiction over this action under its maritime jurisdiction. However, no claims sounding in maritime law are pleaded in the complaint. *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986) ("With admiralty jurisdiction comes the application of substantive admiralty law."). Given that Plaintiffs invoke this Court's maritime jurisdiction, rather than dismissing Plaintiffs' remaining state law claims, Plaintiffs are ordered to show cause within 30 days of the date of this order why this Court should not dismiss Plaintiffs' remaining claims in light of this decision.

## Conclusion

Defendants' motion for judgment on the pleadings is granted in part. Given that Plaintiffs invoke this Court's maritime jurisdiction, Plaintiffs are ordered to show cause within 30 days of the date of this order why this Court should not dismiss Plaintiffs' remaining claims.

**SO ORDERED.**

                                          s/Sandra L. Townes
                                          /SANDRA L. TOWNES
                                          United States District Judge

Dated: September 2, 2015
       Brooklyn, New York