UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
MAVL CAPITAL, INC. *et al.*,

              Plaintiffs,

        - against –

MARINE TRANSPORT LOGISTICS, INC. *et al.*,

              Defendants.
-------------------------------------------------------------x

**MEMORANDUM AND ORDER**
13-cv-7110 (PKC) (RLM)

PAMELA K. CHEN, United States District Judge:

      This case has a long and complicated history.[1]  For purposes of the motions pending before

the Court, the relevant portion of that history began on September 8, 2015, when Judge Townes

issued a Memorandum & Order, dismissing Plaintiffs Maxim Ostrovskiy, MAVL Capital, Inc. and

IAM & AL Group Inc.'s (collectively, "Plaintiffs") federal statutory claims under the Shipping

Act of 1948, 46 U.S.C. § 40101, *et seq.*, and the Racketeer Influenced and Corrupt Organizations

Act, 18 U.S.C. § 1961, *et seq.* ("RICO").  (Dkts. 48, 72.)[2]  In her September 8, 2015 Order, Judge

Townes also directed Plaintiffs to show cause why the remainder of their complaint, alleging state

law and common law claims, should not be dismissed for lack of admiralty jurisdiction.  (Dkt. 48

at 13.)  Instead of responding directly to the show cause directive, Plaintiffs argued that "newly

discovered evidence" warranted relief from Judge Townes's dismissal of their RICO claim,

seeking to invoke subject matter jurisdiction under RICO rather than the Court's admiralty powers

in the first instance.  Construing Plaintiffs' response as seeking relief under Rule 60(b) of the

---

     [1]  This matter was originally assigned to the late Honorable Sandra L. Townes, and was reassigned to the undersigned on February 21, 2018.

     [2]  Unless otherwise noted, all docket entry numbers refer to the docket of case number 13-cv-7110.  The page numbers cited on the docket refer to the document's internal pagination.

Federal Rules of Civil Procedure ("Rule 60(b)"), Judge Townes directed the parties to re-brief these issues under that standard.

On February 14, 2017, Plaintiffs filed a Rule 60(b) motion, seeking, in effect, to vacate Judge Townes's dismissal of Plaintiffs' RICO claim and permitting Plaintiffs to amend their complaint to allege additional facts to revive that claim. Defendants Marine Transport Logistics, Inc. ("MTL"), MTL's director, Dimitry Alper, Aleksandr Solovyev, Royal Finance Group, Inc. ("RFG"), and Car Express & Import Inc. ("Car Express") (collectively, "Defendants") vigorously opposed that motion in several filings. (*See* Dkts. 57-59, 62, 64, 67, 69, 73, 76.)

These events prompted both sides to file cross-motions for sanctions. (*See* Dkts. 53, 55-57, 61, 67.) Judge Townes dismissed those cross-motions as premature. (Dkt. 66.) Defendants sought reconsideration of Judge Townes's dismissal of the sanctions motions, contending that they should be decided in the first instance because they were "not contingent on the merits" of the underlying case. (Dkt. 67.) Judge Townes held Defendants' reconsideration motion in abeyance pending further briefing. (Dkt. 71.)

For the reasons set forth herein, Plaintiffs' Rule 60(b) motion is DENIED. (Dkt. 72.) Defendants' Motion for Reconsideration (Dkt. 67) is GRANTED to the extent it seeks to revoke dismissal of the parties' cross-motions for sanctions, (Dkts. 55 & 61), which are both DENIED.

## BACKGROUND

### I.     Facts[3]

Plaintiffs purchase vehicles domestically and resell them to customers in Europe. As a group, Defendants finance the purchase of vehicles, store them, and ship them to foreign ports.

---

[3]     The factual background of this case has been discussed in prior orders, and is summarized here only to the extent necessary to understand the substantive issues underlying Plaintiffs' Rule 60 motion. Unless otherwise noted, the relevant facts are drawn from the initial complaint and assumed to be true.

Defendant MTL is a licensed Non-Vessel Operating Common Carrier ("NVOCC") and acts as a "logistics service company," handling various aspects of international shipping for its customers, and at times finances the purchase of the same vehicles it ships. (Compl., Dkt. 1, at ¶¶ 3, 34-38, 47-48, 53.) The Plaintiffs allege that remaining Defendants essentially act as MTL's agents. (*Id.* at ¶¶ 6-9, 21-27.) Defendant RFG issues invoices and collects payments owed for MTL's services. (*Id.* at ¶ 9.) Defendant Car Express is a licensed automobile dealer that purchases used and salvaged cars from auctions and dealerships on behalf of MTL customers and coordinates the purchase and shipment of those vehicles from the United States to various ports abroad. (*See id.* at ¶¶ 6-8.) Defendant Alper is the director of operations of MTL. (*Id.* at ¶ 24.) Defendant Solovyev is a principal of both RFG and Car Express. (*Id.* at ¶ 18.)

Between January and August of 2013, Plaintiffs contracted with MTL to ship vehicles abroad and, as a condition of that agreement, agreed to pay certain commissions, fees, and financing costs to RFG for services provided by both MTL and Car Express. (Compl., Dkt. 1 at ¶¶ 45-51.) In the summer of 2013, the parties' relationship soured after Plaintiffs worked out a more favorable arrangement with another shipping company and notified Defendants of their intent to wind down their relationship. (*Id.* at ¶¶ 62-70.) Defendants, at that time, still had several of Plaintiffs' vehicles in their possession, including a 2006 Mercedes SL65 ("Mercedes") and a 2011 Porsche Panamera ("Porsche"), both of which Plaintiffs had previously retained Defendants to store, along with other property, until shipment by a third party. (*See id.* ¶¶ 64-65, 78-109.)

When Plaintiffs demanded the return of that property, Plaintiffs alleged that the Defendants refused under the pretext of being owed payments to which they had no right under the parties' operative agreements. (*Id.* at ¶¶ 66-68.) For example, Plaintiffs allege that Defendants demanded

inflated storage fees to which Plaintiffs had never agreed. (*See id.* at ¶ 66.)[4]  Specifically, Defendants began "invoicing Plaintiffs for amounts never agreed upon, such as commissions, and in some cases, double-billing for vehicles that were financed but already paid in full." (Compl., Dkt. 1, at ¶ 66.)  Ultimately, Plaintiffs allege that when Plaintiffs refused to pay, Defendants obtained title to some of the property by asserting maritime liens and shipped some of the property overseas, without proper title, including three of Plaintiffs' motorcycles, as well as the Mercedes and Porsche. (*See id.* at ¶¶ 83, 86-87, 91-92, 97-98, 103-04, 108-27.)

## II.     The September 8, 2015 Order

Plaintiffs commenced this action on December 12, 2013, asserting claims under the Shipping Act, RICO, and state law.  (*See id.* at ¶¶ 29-30, 128-79.) Their allegations, as relevant here, asserted that Defendants held their property hostage under an extortionate scheme, whereby Defendants claimed to be owed fees they were not due and, based on non-payment of those fees, secured false title to Plaintiffs' property or simply held it by force.  (*See generally id.* at ¶¶ 62, 65, 67-70, 119.) More generally, Plaintiffs alleged that they "believed and therefore averred that [Defendants] are criminals who lure customers into a business relationship on purportedly favorable terms" before "orchestrat[ing] . . . extra-judicial seizure of goods and demand[ing] a ransom under the threat that the seized goods will be sold off without regard for the value which would cause significant financial damage to its victims." (*Id.* ¶¶ 69-70.)

On September 8, 2015, Judge Townes granted Defendants' Motion for Judgment on the Pleadings in part, dismissing each of the federal claims and declining to exercise discretionary

---

        [4]     On this issue, Defendants have maintained that they simply attempted to collect outstanding shipping and storage charges, citing language in their bills of lading that require all outstanding charges for MTL's services to be fully paid before the release of any cargo. (*See* Defs.' Answer, Dkt. 21, at ¶¶ 184-88.)

supplemental jurisdiction over the remaining state claims. With regard to Plaintiffs' RICO claim, Judge Townes held that Plaintiffs had failed to allege a "pattern of racketeering" because the facts they complained of constituted only one predicate act (of extortion) and did not establish the "continuity" needed to state a claim under section 1962(c) of the RICO statute. (Dkt. 48, at 8.) Judge Townes rejected Plaintiffs' efforts to construe their allegations as presenting multiple acts of extortion and thereby "artificially fragment[ ] a singular act into multiple acts simply to invoke RICO" jurisdiction. *Id.* (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997)). However, while Judge Townes dismissed each of Plaintiffs' federal statutory claims, it noted that Plaintiffs had invoked the Court's admiralty jurisdiction without an intelligible basis and ordered Plaintiffs to show cause as to why the Court should not dismiss the Complaint in its entirety for lack of jurisdiction over any potentially remaining claims. (*Id.* at 11-12.)

### III. Plaintiffs' Rule 60(b) Motion and the Parties' Sanctions Motions

In response to the Court's directive to show cause, Plaintiffs attempted to revive their RICO claim and invoke federal jurisdiction thereunder, rather than under the Court's admiralty powers in the first instance. In their April 2016 show-cause submission, Plaintiffs argued that "newly discovered evidence" would enable them to state a claim under RICO. (Dkt. 53.) This "new evidence" was offered principally in the form of an affidavit from Alexander Safonov, owner of several businesses involved in selling, repairing, and delivering vehicles overseas—Crocus Investments, LLC and Crocus, FZE (collectively, "Crocus entities"), and Middle East Asia Alfa FZE ("MEAA"). [5] In his affidavit, Safonov provides information relating to Plaintiffs' Mercedes;

---

[5] On May 27, 2015, the Crocus entities initiated an action before the Federal Maritime Commission ("FMC") against several of the same Defendants named here, alleging that those Defendants had violated the Shipping Act by failing to deliver $100,000 worth of boats. (*See* Dkt. 53-2, Verified Compl., *Crocus Investments, LLC et al. v. Marine Transport Logistics et al.*, FMC Dkt. No. 15-04 (the "FMC Action").) Notably, Plaintiffs' counsel in this case represented the

specifically, Safonov states, *inter alia*, that: (i) MEAA never purchased the Mercedes from Defendants, but instead contracted to receive, repair, and clear it through customs in Dubai as a salvage vehicle for Defendants, (ii) Defendants still owe MEAA $50,000 for fees incurred from importing and repairing the Mercedes, and (iii) the December 2014 $4,950 wire transfer was in payment for boat trailers, not the Mercedes. (*See* Safonov Aff., Dkt. 53-9, at 1-4.) Plaintiffs also claimed "new evidence" in the form of Defendants having made statements in the FMC proceeding about the December 2014 wire transfer that contradicted their representations in this case, which Plaintiffs characterized as newly discovered "fraud".[6]

Relying primarily on Safonov's affidavit, Plaintiffs asserted that this "new evidence" established that Defendants had actively concealed information "which would have significantly altered the course of this litigation", thereby "prejudicing" Plaintiffs' ability to "support a viable cause of action under the RICO Statute." (Dkt. 53, at 7-8.) Plaintiffs requested leave to amend their complaint to add new plaintiffs and facts, and to re-open discovery. (*Id.* at 4-13.) Plaintiffs

---

Crocus entities in the FMC Action, and also represented Safonov and his companies, as Defendants and Third-Party Plaintiffs, against the same Defendants here in *World Express & Connection, Inc. v. Crocus Investments, LLC*, No. 2:15-CV-8126 (D.N.J.) (Complaint filed on Nov. 18, 2015) (the "Crocus Action").

[6] At the oral argument held on March 20, 2018, *see infra*, defense counsel acknowledged that they had made different representations about the $4,950 wire transfer/payment in this matter and the FMC and/or Crocus Actions, but that this inconsistency resulted from Solovyev's poor memory and shoddy recordkeeping. When the Court asked defense counsel why they failed to alert Plaintiffs to the change in Defendants' account regarding the payment, defense counsel weakly suggested that they had not remembered the discrepancy due to the passage of time between the two representations, that the defense firm was busy, and that Solovyev and his attorneys are still not sure what the truth is about the payment at issue. Defense counsel, however, insisted that the failure to advise Plaintiffs was unintentional.

also requested sanctions for Defendants' alleged misrepresentations concerning the Mercedes.[7] (*Id.*)  Defendants opposed Plaintiffs' requests on multiple grounds, and cross-moved for sanctions, contending that Plaintiffs' motion for sanctions lacked a reasonable basis and was not grounded in fact or warranted by existing law.  (*See* Dkt. 56, at 3.)

Because neither party had sufficiently addressed the governing legal standards, Judge Townes directed the parties to re-brief the issues under Rule 60(b).  Plaintiffs' Rule 60(b) motion was fully briefed on February 14, 2017.  (Dkts. 73, 74.)

On March 8, 2018, the Court directed Plaintiffs to submit a proposed amended Complaint ("PAC") setting forth Plaintiffs' re-pleaded RICO claim.  (Dkt. Order, dated March 8, 2018.)  Plaintiffs' PAC was filed on March 15, 2018.  (Dkt. 79.)  Plaintiffs' PAC seeks, in relevant part to:  (1) add as plaintiffs Safonov and his companies; (2) allege new predicate acts in support of the RICO count, based on the FMC and Crocus Actions and other information relating to the Mercedes (which is also set forth in the earlier filed Safonov Affidavit (Dkt. 53-9)), including wire fraud, mail fraud, and Travel Act violations; and (3) allege, as part of the pattern of racketeering, prior criminal and civil matters involving Defendant Salovyev, in which he was accused and/or pled guilty to theft or receiving stolen property (PAC, at ¶¶ 87-90, 311-26).

On March 20, 2018, the Court held oral argument on Plaintiffs' Rule 60(b) motion and the parties' cross-motions for sanctions.

---

[7]  Plaintiffs later filed a "Notice of Cross-Motion" seeking sanctions, presumably on the same grounds, but never filed any supporting briefs.  (*See* Dkt. 61.)  The filing appears to have been an effort to cure procedural deficiencies in Plaintiffs' original sanctions request.

## DISCUSSION

### I.      Plaintiffs' Rule 60(b) Motion

#### A.      Applicability of Rule 60(b)

As a threshold matter, the Court must determine whether Rule 60(b) applies to Plaintiffs' request to revive his RICO claim.  Judge Townes previously construed Plaintiffs' response to the September 8, 2015 Dismissal and Show Cause Order as an implicit invocation of Rule 60(b)(2) and directed the parties to address the standards under that Rule.  (Dkt. 66, at 3.)  Neither party contested Rule 60(b)(2)'s applicability.  Moreover, even though Judge Townes's dismissal of Plaintiffs' federal statutory claims was interlocutory and thus not "final"[8] for purposes of Rule 60(b), courts have nevertheless held that "the standards of Rule 60(b)(2) should be applied where, as here, 'a party seeks to avoid the law of the case by reopening factual issues based upon new evidence[.]'"  *Johnson v. Askin Capital Mgmt., L.P.*, 202 F.R.D. 112, 114 (S.D.N.Y. 2001) (brackets omitted) (quoting *Morin v. Trupin*, 809 F. Supp. 1081, 1086 (S.D.N.Y. 1993)). Accordingly, the Court concludes that Rule 60(b) governs Plaintiffs' motion.[9]

---

[8]   The September 8, 2015 Order was not "final" because it did not "end the action," and therefore could be altered by this court "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b).

[9]   At oral argument on March 20, 2018, Defendants argued that Plaintiffs' December 7, 2016 motion (Dkt. 72), if construed as a Rule 60(b) motion, was untimely. (*See also* Dkt. 73 at 9-11.) Defendants argue that Plaintiffs formally filed a Rule 60(b) motion on December 7, 2016, which was over one year and two months after the Court's September 8, 2015 Dismissal and Order to Show Cause. (*See* Dkts. 48, 67.)  Although Defendants are correct that, as a Rule 60(b) motion, Plaintiffs' motion is time-barred, (*see Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. Of Contemporary Dance*, 466 F.3d 97, 100-101 (2d Cir. 2006) (one-year limitation period runs from the date of judgment, irrespective of an appeal) and *Warren v. Garvin*, 219 F.3d 111, 114 (2d Cir. 2000)(the one-year limitations period is "absolute")), the Court nonetheless resolves it on the merits.

Rule 60(b) provides, in relevant part:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b)(1)-(6). Regardless of the clause invoked, Rule 60 should not be used to "relitigate matters settled by the original judgment." *Donovan v. Sovereign Sec. Ltd.*, 726 F.2d 55, 60 (2d Cir. 1984). "In deciding a Rule 60(b) motion, a court must balance the policy in favor of hearing a litigant's claims on the merits against the policy in favor of finality." *Kotlicky v. U.S. Fid. & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987) (citing 11 C. Wright & A. Miller, Federal Practice and Procedure § 2857 (1973)). Importantly, "Rule 60(b)(6) relief is only available if Rules 60(b)(1) through (5) do not apply, and if extraordinary circumstances are present or the failure to grant relief would work an extreme hardship on the movant. " *ISC Holding AG v. Nobel Biocare Fin. AG,* 688 F.3d 98, 109 (2d Cir. 2012) (citing *In re Emergency Beacon Corp.,* 666 F.2d 754, 758–59 (2d Cir. 1981)).

Where, as here, a party seeks relief under Rule 60 in order to file an amended complaint the court may "take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment." *Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 245 (2d Cir. 1991). In considering the proposed amendments, "care must be taken to avoid allowing Rule 15 which liberally allows amendments of a complaint to be used to contravene the policy in favor of the finality of judgments." *Antigenics, Inc. v. U.S. Bancorp Piper Jaffray,*

*Inc.*, No. 03-CV-0971 (RCC), 2004 WL 2290899, at *1 (S.D.N.Y. Oct. 8, 2004) (quotation marks, brackets, and citation omitted); *Browning Ave. Realty Corp. v. Rosenshein*, 142 F.R.D. 85, 88 (S.D.N.Y. 1992) (noting that leave should be granted only when the party seeking the amendment has "not unduly delayed" doing so). Of course, where allowing amendment would be futile, there is no tension between Rule 15 and Rule 60, and Rule 60 standards govern without adulteration. *See Antigenics, Inc.*, 2004 WL 2290899, at *1 ("In this case there is no risk of Rule 15 undermining the finality of the prior judgment [because] Plaintiff's proposed amendments are futile."); *cf. Williams v. Citigroup Inc.,* 659 F.3d 208, 213 (2d Cir. 2011) ("[I]n view of the provision in Rule 15(a) that leave to amend shall be freely given when justice so requires, it might be appropriate in a proper case to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment.") (citations, brackets, and quotation marks omitted). Plaintiffs' motion, liberally construed, seeks relief under subsections (2), (3), and (6) of Rule 60(b).[10] Each basis for relief is unavailing, as discussed below.

### 1.     Rule 60(b)(2)

Plaintiffs' primary argument rests on Rule 60(b)(2). Whether relief is sought under Rule 59(e) or Rule 60(b)(2), courts apply the same strict standard, and decisions under either are authoritative. *Becnel v. Deutsche Bank AG*, 838 F. Supp. 2d 168, 171 (S.D.N.Y. 2011); *United*

---

[10]     Plaintiffs' notice of motion states only that they are moving under Rule 60(b)(2) "on grounds of newly discovered evidence." (Dkt. 72.) Yet, Plaintiffs also appear to sporadically invoke other grounds for relief in their opening and reply briefs. They quote, for instance, subsection (b)(6) in the "Standard of Review" section of their opening brief. (Dkt. 72-1, at 4.) In three short paragraphs under the heading "*Plaintiff's Newly Discovered Evidence Warrants Relief from the Court's Order of September 8, 2015*," Plaintiffs' opening brief elsewhere suggests that Defendants' misrepresentations regarding the Mercedes also constitute "misconduct" meriting relief under 60(b)(3). (*Id.* at 15.) While it is doubtful that these cursory references to subsections 3 and 6 are sufficient to raise substantive arguments thereunder, the Court, for the sake of clarity and finality in this case, will address the implicit arguments that Plaintiffs appear to raise under each subsection.

*States v. All Right, Title & Interest In Prop. & Premises Known As 710 Main St., Peekskill, N.Y.*,
753 F. Supp. 121, 126 (S.D.N.Y. 1990). In order to obtain relief under Rule 60(b)(2), the moving
party must demonstrate that the purportedly "newly discovered evidence" could not have been
discovered in time "with reasonable diligence". Fed. R. Civ. P. 60(b)(2); *Sable v. Kirsh*, No. 15-
CV-4372 (ADS) (SIL), 2017 WL 4620997, at *1-2, *4 (E.D.N.Y. Oct. 13, 2017) (finding plaintiff
unable to demonstrate any of the requirements of Rule 60(b)(2), including that "the movant must
have been justifiably ignorant of them despite due diligence") (quoting *South v. Saab Cars USA*,
28 F.3d 9, 12 (2d Cir. 1994) ("[L]ack of due diligence on the part of plaintiff's attorney is
insufficient to justify application of an equitable toll." (internal citations omitted)); *see also Clarke
v. United States*, No. 13-CV-3080 (WFK) (MDG), 2016 WL 4573976, at *2 (E.D.N.Y. Aug. 31,
2016) ("To succeed on such a motion, the movant bears the burden of showing . . . that the movant
was 'justifiably ignorant' of the new evidence 'despite due diligence' prior to judgment.") (citing
*United States v. Int'l Broth. Of Teamsters,* 237 F.3d 370, 392 (2d Cir. 2001)).

Here, Plaintiffs cannot make that showing. First, with respect to the pre-2013 criminal and
civil actions involving Defendant Solovyev, which Plaintiffs seek to add to cure the continuity
defect in its RICO claim, Plaintiffs cannot demonstrate that these prior cases could not have been
discovered "with reasonable diligence" before the dismissal of Plaintiffs' RICO claim in
September 2015[11] Order, so as to constitute "newly discovered evidence" under Rule 60(b)(2).
Indeed, as Plaintiffs' counsel "candidly" acknowledged at oral argument, Solovyev's prior cases
and convictions were all matters of public record and could have been discovered either before the

---

[11] Indeed, given that these prior criminal and civil actions were filed before 2013, Plaintiffs
could have discovered them, with the exercise of reasonable diligence, before the filing of their
original complaint and the briefing of Defendants' motion to dismiss the complaint.

filing of this lawsuit or Defendants' motion to dismiss. Furthermore, the explanation provided by

Plaintiffs' counsel at oral argument for not including these prior actions in the original complaint,

namely, that Plaintiffs' RICO theory at that time was one of "closed-ended continuity"[12], only

made Plaintiffs' failure to allege them in the initial complaint less justifiable. In the end, Plaintiffs'

counsel, in essence, admitted at oral argument that Plaintiffs were simply trying to get a second

bite at the apple and to "fix the problem" in Plaintiffs' RICO claim that Judge Townes had

identified in her September 8, 2015 Order. That is plainly *not* a basis for vacating an order under

Rule 60(b)(2).[13] *See Donovan*, 726 F.2d at 60 (Regardless of the clause invoked, Rule 60 should

not be used to "relitigate matters settled by the original judgment.").

Second, with respect to the "new evidence" regarding Safonov's dealings with Defendants,

Plaintiffs also cannot demonstrate that this evidence could not have been discovered in time with

---

[12]    "Closed-ended continuity" is "demonstrated by predicate acts that amount to continued criminal activity by a particular defendant." *Defalco v. Bernas*, 244 F.3d 286, 321 (2d Cir. 2001) (to constitute a pattern of racketeering activity, predicate acts must be "related" and "amount to or pose a threat of continued criminal activity"). The other type of continuity is "open-ended continuity", which exists when "there is a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Id*. at 323. Plaintiffs claimed at oral argument that their original RICO theory involved closed-ended continuity, but, based on their "new evidence", they were now relying on a theory of open-ended continuity. Regardless, as discussed *supra,* Discussion Part I.A.1, Plaintiffs' attorney's lack of reasonable diligence in properly and timely alleging predicate acts under a closed-ended theory is fatal to their Rule 60(b) claim.

[13]    Even if Solovyev's prior civil and criminal matters could be considered "newly discovered" evidence, this evidence would not, as a matter of substance, be sufficient to plead either relatedness or closed-ended or open-ended continuity. Plaintiffs do not allege sufficient detail about the nature of the conduct charged or alleged in those matters, so as to establish that they were undertaken as part of the pattern of racketeering alleged here. *See Defalco*, 244 F.3d at 321, 323 (plaintiff must allege "a series of related predicates extending over a substantial period of time", and "where the enterprise primarily conducts a legitimate business, there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity"). Even as of the March 20, 2018 oral argument, Plaintiffs' counsel could not explain the conduct involved in one of Solovyev's prior criminal cases.

reasonable diligence, given that Plaintiffs' counsel in this action represents Safonov in the FMC and Crocus Actions, and Plaintiffs, therefore, have known of, since at least May 27, 2015, the date the FMC Action was initiated[14], the evidence that they are now claiming as newly discovered.[15]

Again, Plaintiffs cannot be allowed to re-plead their RICO claim based on information that they had prior to Judge Townes's September 8, 2015 order dismissing it. *Clarke*, 2016 WL 4573976, at *2 (E.D.N.Y. Aug. 31, 2016) ("To succeed on such a motion, the movant bears the burden of showing . . . that the movant was 'justifiably ignorant' of the new evidence 'despite due diligence' prior to judgment.") (citing *Int'l Broth. Of Teamsters,* 237 F.3d at 392).

Furthermore, even if Plaintiffs were permitted to re-plead their RICO claim based on the additional Safonov information, it would still be insufficient to state open-ended continuity for purposes of a RICO claim. Even charitably construed, the "new evidence" from Safonov permits Plaintiffs to allege a few more predicate acts[16], some based on the same Mercedes transaction

---

[14] (*See* Dkt. 53-2, Verified Compl., *Crocus Investments, LLC et al. v. Marine Transport Logistics et al.*, FMC Docket No. 15-04 (Filed May 27, 2015).)

[15] Defense counsel is also correct to point out that at oral argument on March 20, 2018, Plaintiffs may have misrepresented that Defendant Solovyev's 2009 indictment only came to light due to a "trigger" *after* Judge Townes' September 8, 2015 Order. In a declaration filed in this matter as early as November 25, 2014, Plaintiffs' counsel stated that, "On November 8, 2014, I conducted a search on the New Jersey Courts Criminal Cases Public Access Website for the criminal records on file for defendant Aleksandr Solvyev". (Defendants' Letter, dated March 23, 2018, Dkt. 80; Declaration of Marcus. A Nussbaum, Esq., Dkt. 38-3, at ¶ 9.) Plaintiffs' counsel even annexed exhibits regarding Solovyev's 2009 state criminal charges and guilty plea to Plaintiffs' opposition to Defendants' original motion to dismiss. (Dkt. 38-2, at 6, n.1.) Thus, the record in this case clearly demonstrates that Plaintiffs' counsel knew about Solovyev's pre-2013 criminal matters long before the September 8, 2015 Order.

[16] Indeed, several of these predicates arguably do not allege sufficient detail to be cognizable. (*See, e.g.*, PAC, at ¶¶ 87-90, 314 (alleging, based on a vague description of Defendant Solovyev's New Jersey state criminal charges, indictment, and guilty plea for receipt of stolen property, that the pattern of racketeering began in 2009 ).) *See Moore v. PaineWebber, Inc.,* 189 F.3d 165, 172-73 (2d Cir. 1999) (stating that Rule 9(b)'s particularity requirements apply to "RICO claims for which fraud is the predicate illegal act"); *Sky Med. Supply Inc. v. SCS Support Claims*

between MAVL and Defendants in 2013 alleged in the original complaint and some based on Safonov's three boat-related transactions with Defendants in 2013 and 2014. (*See, e.g.,* PAC, at ¶¶ 197-307.) But, the addition of these new predicate acts still do not plausibly allege the "continuity" element of a RICO claim. Open-ended continuity requires a threat of continued criminal activity. *See H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989); *GICC Capital Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 465 (2d Cir. 1995). Where allegations concern an "inherently terminable" scheme, there is no threat of continued criminal activity and open-ended continuity is lacking as a matter of law. *GICC Capital Corp.*, 67 F.3d at 466 ("It defies logic to suggest that a threat of continued looting activity exists when, as plaintiff admits, there is nothing left to loot."); *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999) ("[A]n 'inherently terminable' scheme does not imply a threat of continued racketeering activity."). Even under Plaintiffs' proposed re-pleading of their RICO claim, the entire scheme of which Plaintiffs and the proposed new plaintiffs complain begins and ends with the misappropriation or withholding of certain property between 2009 and 2016, with the primary conduct as alleged taking place between January 2013 and August 2014. (*See* PAC, at ¶¶ 87-90, 303, 384.) There is simply not enough in the PAC to plausibly allege the open-ended threat of continued criminal activity to support a civil RICO claim.

---

*Servs., Inc.*, 17 F. Supp. 3d 207, 228 (E.D.N.Y. 2014); *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014) ("RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it.") (quoting *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 20 (1st Cir. 2000)). This lack of particularity would also defeat any closed-ended continuity claim since all of the events pleaded with particularity occurred over the course of less than two years, between January 2013 and August 2014. (*See* PAC, at ¶¶ 87-90, 303, 384.) *Cofacredit, S.A.*, 187 F.3d at 242 (stating that the Second Circuit "has never held a period of less than two years to constitute a 'substantial period of time'" for purposes of establishing closed-ended continuity).

In sum, Plaintiffs have failed to establish grounds sufficient to justify the "extraordinary relief" they seek under Rule 60(b)(2); in particular, Plaintiffs' lack of diligence all but precludes such relief.

### 2. Rule 60(b)(3)

Rule 60(b)(3) provides for relief based upon a showing of "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct" by an opposing party. Fed R. Civ. P. 60(b)(3). Ordinarily, subsection (b)(3) is invoked "where material information has been withheld or incorrect or perjured evidence has been intentionally supplied." *In re Emergency Beacon Corp.*, 666 F.2d at 759. When that is the case, as it appears to be here, a movant seeking Rule 60(b)(3) relief must produce "clear and convincing evidence" of fraud or misconduct causing material misrepresentations. *Fleming v. N.Y. Univ.*, 865 F.2d 478, 484 (2d Cir. 1989). Under no circumstances can a Rule 60(b)(3) motion "serve as an attempt to relitigate the merits." *Id.* If a movant contends that an adversary's "fraud" deprived it of an opportunity to fully and fairly present its case, then fraud of a narrow sense must be shown—the fraud must "seriously affect[ ] the integrity of the normal process of adjudication." *Gleason v. Jandrucko*, 860 F.2d 556, 559 (2d Cir. 1988); *Buxbaum v. Deutsche Bank AG*, 216 F.R.D. 72, 81 (S.D.N.Y. 2003); *but see Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 286 F. Supp. 2d 309, 314 (S.D.N.Y. 2003) (finding that no showing of fraud is necessary because "even an accidental failure to disclose or produce materials requested in discovery can constitute 'misconduct' within the purview of Rule 60(b)(3)").

In any event, a movant "must show that the conduct complained of prevented the moving party from fully and fairly presenting his case." *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 176 (2d Cir. 2004) (quotation marks and citations omitted); *Apex*

*Employee Wellness Servs., Inc. v. APS Healthcare Bethesda, Inc.*, No. 11-CV-9718 (ER), 2017 WL 456466, at *11 (S.D.N.Y. Feb. 1, 2017) (citing *Fleming*, 865 F.2d at 485). While there is no bright line for determining whether a party has been prevented from "fully and fairly presenting" their case, at least one court in this Circuit has held that "[i]n the context of an adverse party's alleged failure to produce documents during discovery, plaintiffs must show that the undisclosed material either would have been important as evidence at trial or would have been a valuable tool for obtaining meaningful discovery." *Catskill Dev., L.L.C.*, 286 F. Supp. 2d at 316 (citing *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 926 (1st Cir. 1988)). This can be established by showing, "for example, that 'the concealment precluded inquiry into a plausible theory of liability, denied [plaintiffs] access to evidence that could well have been probative on an important issue, or closed off a potentially fruitful avenue of direct or cross examination.'" *Id.* (quoting *Anderson*, 862 F.2d at 925). On the other hand, conduct does not substantially interfere with Plaintiffs' presentation of their case if the concealed or misrepresented evidence "turn[s] out to be cumulative, insignificant, or of marginal relevance." *Id.*; *see also Thomas v. City of N.Y.*, 293 F.R.D. 498, 504 (S.D.N.Y. 2013) (adopting the framework set forth in *Anderson*); *cf. Genger v. Genger*, 663 F. App'x 44, 51 (2d Cir. 2016) (holding that a party was not prevented from fairly presenting her case where court did not rely on misrepresentations in affidavit).

Here, notwithstanding Plaintiffs' hyperbolic claims about Defendants perpetrating a "fraud" upon them and the Court[17], Plaintiffs have failed to demonstrate that Defendants'

---

[17] (*See, e.g.*, Dkt. 72-1, at 8 (asserting that Defendants committed "fraud upon this Court by actively misrepresenting the invoice and bank statement referred to above in order to hide and obfuscate a pattern of racketeering and corrupt activities so as to evade and avoid liability to plaintiffs herein under the RICO statute and to fraudulently induce this Honorable Court to dismiss plaintiffs' cause of action under RICO"); *id.* at 10 (asserting that Defendants made "false and fraudulent representations to this Honorable Court with respect to pending matters."); *id.* (claiming to have discovered Defendants' "false and fraudulent representations made to this Honorable

inconsistent statements about the disposition of the Mercedes prevented Plaintiffs from "fully and fairly presenting their case." *State St. Bank & Trust Co.*, 374 F.3d at 176.  Indeed, Plaintiffs have not articulated how the apparent misrepresentations regarding payments for the Mercedes affected their ability to litigate, precluded plausible theories of liability, or otherwise impacted the proceedings.  Their briefs supporting their Rule 60(b) motion summarily assert in a passing paragraph that by misrepresenting the sale of the Mercedes the Defendants "materially affected the outcome of this litigation." (Dkt. 72-1, at 16).  This falls far short of the "extraordinary" burden required for relief under Rule 60(b)(3).

Elsewhere, in their initial show cause response and at oral argument, Plaintiffs asserted that "but for defendants' concealment of information, [P]laintiffs would have timely moved to amend the[ir] Complaint with respect to their cause of action under the RICO act, and to add Mr. Alexander Safonov as a plaintiff".  (Dkt. 53, at 10.)  However, as discussed above, this is demonstrably false, since Plaintiffs' counsel, in fact, did know about Safonov and the FMC Actions in time to have amended, yet did not do so.  Furthermore, for the reasons discussed above, even if Plaintiffs had known of Safonov's claims against Defendants, those acts would not have been sufficient to salvage Plaintiffs' RICO claim in this action.

In sum, Plaintiffs have failed to provide any basis to grant the "extraordinary relief" they seek under Rule 60(b)(3).

### 3.    Rule 60(b)(6)

Finally, Plaintiffs have no recourse under subsection (b)(6).  The Second Circuit has made clear that a party cannot invoke Rule 60(b)(6) when the grounds for relief can be considered under

---

Court" through "extraordinary investigatory means."); *id.* at 16 (accusing Defendants of "actively secret[ing] and conceal[ing]" evidence regarding the Mercedes).)

one of the other clauses of the Rule. *See ISC Holding AG,* 688 F.3d at 100; *Int'l Bhd. of Teamsters*, 247 F.3d at 391-92. Because the facts Plaintiffs present for their primary argument based on "newly discovered evidence" are identical to those that would be asserted under subsection (b)(2), they cannot seek relief thereunder. *See Tufts v. Corp. of Lloyd's*, 981 F. Supp. 808, 814 (S.D.N.Y. 1996) ("The relief Plaintiffs seek in this action is clearly premised on the alleged newly discovered evidence and, as such, falls squarely within Rule 60(b)(2). Plaintiffs therefore cannot also avail themselves of Rule 60(b)(6)."); *see also Int'l Bhd. of Teamsters*, 247 F.3d at 391-92 ("[I]f the reasons offered for relief from judgment can be considered in one of the more specific clauses of Rule 60(b), such reasons will not justify relief under Rule 60(b)(6).").

## II.    Cross-Motions for Sanctions

As noted above, Judge Townes previously dismissed, without prejudice, the parties' cross-motions for sanctions. (Dkt. 66.) She explained that she preferred to have the parties thoroughly address the merits of the case without referencing the sanctions requests and without the vitriol that had obfuscated their respective arguments. (*See id.* at 3). Defendants nevertheless moved for reconsideration of that order, which Judge Townes held in abeyance pending the resolution of the underlying claim. (Dkt. 71.) The Court hereby grants that motion to the extent it seeks consideration of the parties' sanctions motions, which the Court now resolves.

### 1.    Plaintiffs' Rule 37 Motion

Plaintiffs have moved for sanctions under Rule 37(c), contending that Defendants violated that rule by misrepresenting in this action how they disposed of the Mercedes. (Dkt. 53, at 4-13.) At oral argument, Plaintiffs clarified that they are not seeking a monetary sanction, but rather seek to have their RICO claim reinstated, as re-pleaded in the PAC, and this action continued in federal court. The Court denies that relief, both because it does not find defense counsel's conduct

appropriate for sanctions and because, as discussed *supra*, reinstatement of Plaintiffs' RICO claim would be improper.

Rule 37(c)(1) states in relevant part that "a party that without substantial justification fails to disclose the information required by Rule 26(a) or (e) is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The rule further provides that additional or alternative sanctions may be awarded upon motion and the opportunity be heard. *Id.* The imposition of sanctions under Rule 37(c)(1) is a matter within the trial court's discretion. *Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*, 77 F. Supp. 2d 446, 458 (S.D.N.Y. 1999).

Here, Plaintiffs have failed to justify sanctions. While defense counsel's failure to alert Plaintiffs to the later contradictory representation by Defendants in the FMC and/or Crocus Action regarding the disposition of the Mercedes was careless, the Court accepts defense counsel's explanation that the error was unintentional and not intended to commit a fraud upon Plaintiffs of the Court. Furthermore, to the extent defense counsel misrepresented facts, the error was harmless, and, as previously discussed, did not prevent Plaintiffs from fully and fully presenting their case or affect its outcome. Plaintiffs' many filings seeking relief from the Court's September 2015 Order were, as explained above, futile.

Accordingly, Plaintiffs' motion for sanctions based on defense counsel's alleged misrepresentation is denied.

### 2. Defendants' Rule 11 Motion

Defendants cross-moved for sanctions under Rule 11, arguing that Plaintiffs' sanction motion was sanctionably meritless. Rule 11 "[s]anctions may be—but need not be—imposed when court filings are used for an 'improper purpose,' or when claims are not supported by existing

law, lack evidentiary support, or are otherwise frivolous." *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) (quoting Fed. R. Civ. P. 11(b)-(c)). Courts have cautioned litigants that Rule 11 sanctions are reserved for extraordinary circumstances. *See Morristown Daily Record, Inc. v. Graphic Commc'ns Union, Local 8N*, 832 F.2d 31, 32 n.1 (3d Cir. 1987).

The Court does not find such extraordinary circumstances exist here. As an initial matter, the contradictory representations made by Defendants in this action and the FMC and/or Crocus Actions, and the admitted failure by defense counsel to disclose the latter representation, while harmless as a substantive matter, provide a legitimate basis for Plaintiffs to seek sanctions against Defendants and their counsel.[18] *CMF Investments, Inc. v. Palmer*, No. 13-CV-475 (VEC), 2014 WL 6604499, at *10 (S.D.N.Y. Nov. 21, 2014) (denying defendant's motion for sanctions where he "did not come to the Court with entirely clean hands himself"). As discussed, defense counsel has provided no justification for the seeming misrepresentation in this case or the failure to disclose the contradictory representations made by Defendants regarding the disposal of the Mercedes. While Plaintiffs' requests for sanctions were procedurally improper and muddled, they were not without a reasonable basis. In short, Defendants' or their counsel's own actions caused the Rule 37 motions about which they now complain and extended the litigation as much as any other factor in this case.

---

[18] Indeed, defense counsel did not acknowledge until the March 20, 2018 oral argument that they had, in fact, made contrary representations in the different actions and had failed to disclose or correct the inconsistency in this action. *See supra,* note 6.

**CONCLUSION**

Accordingly, Plaintiffs' Rule 60 motion is DENIED. (Dkt. 72.) Defendants' Motion for Reconsideration (Dkt. 67) is GRANTED to the extent it seeks to revoke dismissal of the parties' cross-motions for sanctions, which are both hereby DENIED. Plaintiffs having failed to show cause as to why their state law and common law claims should not be dismissed for lack of subject matter jurisdiction, the Court dismisses those claims, without prejudice to re-assert in state court. The Clerk of Court is respectfully directed to enter judgment in Defendants' favor as to Plaintiffs' federal statutory claims, and close this case accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
PAMELA K. CHEN
United States District Judge

Dated: March 26, 2018
        Brooklyn, New York